In re Application of Mills.
Valorous Mills, doing business as Mills Film Trans-
fer, appellant, v. Nebraska Motor Carriers Associa-
tion, appellee.
247 N. W. 2d 619

Filed December 8, 1976. No. 40588.

Nelson, Harding, Marchetti, Leonard & Tate, Patrick
E. Quinn, and Steven K. Kuhlmann, for appellant.

James E. Ryan, for appellee.

Heard before White, C. J., Spencer, Boslaugh,
McCown, Newton, Clinton, and Brodkey, JJ.

McCown, J.

Valorous Mills, doing business as Mills Film Transfer,

of Lincoln, Nebraska, filed an application with the Nebraska Public Service Commission for authority to establish a motor carrier express tariff on general commodities between Lincoln and Omaha, Nebraska. The Nebraska Public Service Commission denied the application and Mills has appealed.

Prior to 1966, Mills held a certificate of public convenience and necessity authorizing the transportation of "motion picture films, newspapers and express packages exclusively," between Omaha and Lincoln, Nebraska, and to other points and places in Nebraska. On February 16, 1966, the Nebraska State Railway Commission entered an order interpreting the words "express packages exclusively" to mean packages of not more than 150 pounds, in shipments of 2,000 pounds or less, and that an express package and a shipment of express packages "must be transported by Mills at premium rates." The order also provided that Mills was authorized to charge the rates it had previously been charging "until applicable express rates are prescribed." For commodities other than films and newspapers, Mills had been charging rates established under official class and commodity tariff 4 (later 4-A). No express rates were ever established and Mills' rates, except for films and newspapers, have always been governed by Nebraska class and commodity tariff 4-A, until October 15, 1973.

In 1973, an application was filed on behalf of a large number of Nebraska intrastate motor carriers for an increase in Nebraska class and commodity tariff 4-A. As to shipments within Mills' weight limitations, the increase requested was 5 percent. As an intervener in that proceeding, Mills opposed any such increases as they might apply to Mills. On October 15, 1973, the Nebraska Public Service Commission entered its order granting the application for the increase in rates of tariff 4-A. It specifically referred to the 1966 order interpreting Mills' certificate and to the provision in

that order requiring Mills to charge tariff 4-A rates until applicable express rates were prescribed. The Public Service Commission then ordered that the tariff 4-A rate increase granted October 15, 1973, would not be applicable to Mills for a period not to exceed 90 days, during which time Mills could submit to the commission proposed motor carrier express tariffs.

On November 27, 1973, Mills filed with the Public Service Commission a "motor carrier's truck express tariff." That tariff was simply a proposal to retain the rates which had been in effect on shipments of 2,000 pounds or less under tariff 4-A prior to the order of October 15, 1973. The express tariff filed was to apply only to shipments between Lincoln and Omaha but not to Mills' traffic to other points and places. Protests were filed but later withdrawn, and letters in opposition to the proposed express tariff were filed by other carriers. Hearing on the application was held on February 6, 1974.

Mills' testimony indicated that it was losing business to private carriage and not to other carriers under the rates in effect before the 5 percent increase of October 1973. Mills' testimony was that it did not need the increase to remain profitable, nor did it compete with other motor carriers for the Lincoln-Omaha traffic because of the unique weight limitations on its certificate of operation, its expedited express-type service, and its exclusive handling of films and magazines. The evidence indicated that Mills received approximately 25 percent of its business from the transportation of liquor and that this business was primarily the business being lost to private carriage. At the completion of the hearing Mills was allowed to continue the old rates until the application for the express tariff was resolved.

On December 18, 1975, almost 2 years later, the Nebraska Public Service Commission found "(1) There should be no disparity in the class rates in Nebraska

Intrastate Commerce as regards Official Class and Commodity Tariff 4-A.

"(2) The proposed tariff submitted by Valorous Mills, dba Mills Film Transfer is unacceptable as it does not prescribe 'premium rates' as called for by the interpretation order of Mills' authority of 1966." Mills was therefore ordered to effectuate the same class rates in official class and commodity tariff 4-A as all other participants in that tariff, effective January 12, 1976. This is the order from which Mills has appealed.

Essentially, Mills contends that the Public Service Commission erred in determining that Mills' "express" authority required premium rates; that the denial of Mills' express tariff was arbitrary and unreasonable; and the order is not supported by sufficient competent and probative evidence. Mills does not challenge the 1966 order which authorizes Mills to transport express packages exclusively and to transport them at premium rates, but asserts only that "premium" rates are not required to be higher than class rates, but may be lower.

The Interstate Commerce Commission has continuously held, with respect to interstate traffic, that "express" authority requires premium rates and premium rates have been interpreted to mean more than general freight rates. See, Railway Express Agency, Inc., 31 M. C. C. 363; Transportation Activites of Arrowhead Freight Lines, Ltd., 61 M. C. C. 131 and 63 M. C. C. 573. In the latter case the Commission said: "(I)t is fundamental that any motor carrier authorized to perform a premium service must, if it provides such service, make appropriate premium charges therefore. * * * Because express service is marked by an undertaking to provide transportation services superior to that normally required and furnished for ordinary freight, it is both appropriate and proper that relative higher charges should be established for it."

The finding of the Public Service Commission that the proposed "express" tariff submitted by Mills did not

prescribe premium rates as called for by the interpretation order of 1966 is clearly supported by the evidence.

This court has consistently refused to act as a superior public service commission with authority to substitute its judgment for that of the commission. See Safeway Cabs, Inc. v. Honer, 154 Neb. 533, 48 N. W. 2d 672. The rate-fixing power of the Public Service Commission, if properly exercised, is legislative in character and has the force and effect of a statute on the subject. United Mineral Products Co. v. Nebraska Railroads, 175 Neb. 285, 121 N. W. 2d 492. On an appeal to the Supreme Court from an order of the Public Service Commission, administrative or legislative in character, the only questions to be determined are whether the commission acted within the scope of its authority, and whether the order complained of is reasonable and not arbitrarily made. Preisendorf Transp., Inc. v. Herman Bros., Inc., 169 Neb. 693, 100 N. W. 2d 865. That rule is peculiarly applicable to an appeal from an order of the commission fixing rates for common carriers.

In determining the question of whether the findings of the Public Service Commission are arbitrary and capricious, this court has held that if there is evidence to sustain the findings of the commission, this court may not intervene. It is only where the findings of the commission are against the evidence that this court may hold the commission's findings are arbitrary and capricious. Robinson v. National Trailer Convoy, Inc., 188 Neb. 474, 197 N. W. 2d 633.

As late as 1975, this court reaffirmed the rule that this court, upon appeal, cannot disturb findings of the Public Service Commission unless it appears that some requirements of the law have been violated or disregarded, or that the result reached cannot reasonably be derived from the facts proved. Nebraska Railroads of Omaha v. Nebco, Inc., 194 Neb. 322, 231 N. W. 2d 505.

There is evidence in the record to support the finding of the commission that there should be no disparity in

the class rates in Nebraska intrastate commerce as regards official class and commodity tariff 4-A. There is also evidence to support the commission determination that the denial of permission to flag out of class rates would not preclude carriers from effectuating commodity rates and utilizing flag outs to tailor compensatory rates to their particular type of operation.

The Public Service Commission here acted within the scope of its authority in fixing rates. The order entered was reasonable. There is evidence to sustain the findings of the commission and those findings are not arbitrary nor capricious.

The order of the commission is affirmed.

AFFIRMED.