IN RE APPLICATIONS OF PETROLEUM TRANSPORT SERVICE, INC., COUNCIL BLUFFS, IOWA, ET AL.
PETROLEUM TRANSPORT SERVICE, INC., ET AL., APPELLANTS, v. WHEELER TRANSPORT SERVICE, INC., ET AL., APPELLEES.

197 N. W. 2d 8

Filed May 5, 1972. No. 38282.

Viren, Epstein & Leahy, for appellants.

James E. Ryan, for appellees.

Heard before SPENCER, SMITH, and NEWTON, JJ., and CHADDERDON and C. THOMAS WHITE, District Judges.

SPENCER, J.

Petroleum Transport Service, Inc., Bray Lines, Inc.,

and Groendyke Transport, Inc., appeal from the denial of their separate applications to transport anhydrous ammonia and fertilizer solutions from the Phillips Petroleum plant at Hoag, Nebraska, over irregular routes to all points and places in Nebraska. The applications were heard on a consolidated record, and were protested by the following appellee carriers: Wheeler Transport Service, Inc.; Herman Brothers, Inc.; Bulk Carriers, Inc.; Wynne Transport, Inc.; O. E. Poulson, Inc.; Henry W. and T. Clarence Bridge, doing business as Bridge Bros.; Ruan Transport Corporation; Ward Transport, Inc.; and Peake, Inc. We reverse.

The first hearing in this matter was held February 25, 1970, and on June 1, 1970, the applications were granted as applied for. Appellees filed motions for rehearing and reconsideration. On October 26, 1970, the Commission granted the motion for rehearing and rescinded the order entered June 1, 1970, and held a further hearing which resulted in the present order denying the applications, which was entered on June 7, 1971.

Appellants urge that the granting of the motion for rehearing and the rescinding of the order entered on June 1, 1970, and the granting of the order on June 7, 1971, denying the applications, are contrary to the law and the evidence and are null and void as being arbitrary and unreasonable.

The appellants, who are headquartered in states other than Nebraska, are motor carriers of anhydrous ammonia and fertilizer solutions, with extensive operations in interstate commerce. Appellants have been hauling these commodities from Hoag, Nebraska, in interstate commerce. The demand for anhydrous ammonia and its shipping date depends upon the amount of rainfall in the areas where the commodity is to be used. If there is a certain moisture content on the land, it cannot be used. On occasions appellants have had equipment standing at Hoag, Nebraska, for the purpose of rendering service in interstate commerce, and because of cli-

matic conditions in states served from Hoag, Nebraska, its trucks are idle when at the same time Phillips Petroleum Company is without available equipment from carriers holding authority in Nebraska to conduct transportation in Nebraska intrastate commerce because of the heavy demand for fertilizer.

The testimony of the shipper's regional director of rates and services indicated that Phillips, which has extended its fertilizer operations in surrounding areas, is faced with extremely high distribution costs brought about by rate increases and keener competition. Phillips has shifted its rail tonnage to trucks because railroads were found to be unsatisfactory for the movement of fertilizer. Ninety percent of the fertilizer volume moves during the months of April, May, and June. Fertilizer distribution is completely seasonal, with a peak month within the season and a peak week within that month. Phillips must not only compete for business but also for the equipment of fully certified motor carriers. It must also compete with the climatic condition, which is the determining factor in the demand and use of fertilizer.

Phillips has actively solicited the appellants herein to obtain additional equipment, and in spite of their cooperation Phillips has been unable to meet the needs and demands of its customers. To be competitive, Phillips purchased 18 trailers and leased them to one of the appellees. In spite of this heavy investment, it is still unable to meet its needs. Phillips is not interested in any additional investment in trailers, and is willing to sell its present trailers if the carriers can furnish it with sufficient equipment. It urges the granting of the applications herein to help alleviate the situation.

The Commission found that there is no doubt there is a problem in the transportation of anhydrous ammonia during the peak season, although both appellants and appellees testified that they had some equipment available which was not used in the peak season. This was due, with regard to appellees' equipment, to the lack of

knowledge of the availability of this equipment by the shippers. On the part of the appellants, this was due to bad weather in the areas into which they were certified to transport anhydrous ammonia. The Commission found that it is clear from the evidence that the present Nebraska interstate carriers of anhydrous ammonia and liquid fertilizer solutions cannot fulfill the need for transportation of these commodities during the peak season to the satisfaction of all shippers. The Commission also found that the amount of equipment that appellants could supply would not make an appreciable contribution to the solution of the problem and this is the basis on which the applications were denied.

The Commission specifically found that the appellants are willing and able to properly perform the services proposed and to conform to the provisions of sections 75-301 to 75-322.01, R. R. S. 1943, and the requirements, rules, and regulations of the Commission thereunder. It further found that the proposed intrastate service is not required by the present or future public convenience and necessity. It is this latter finding we question.

The appellees concede that there are times in the peak season when the needs of Phillips and others who are their competitors are such that appellees do not have sufficient equipment to meet the demands of the shippers, but they allocate their equipment in as equitable a manner as possible between all of the shippers. Appellees are protesting the applications because of the competition the appellants would provide during the off season when the equipment available by the appellees is more than adequate to meet the demands of the shippers. Phillips' testimony is that it expected to use appellants' equipment to move its commodities only during the peak season.

The law applicable herein was enunciated in Poulson v. Hargleroad Van & Storage Co., 183 Neb. 201, 159 N. W. 2d 302, in which we held: "In determining the issue of public convenience and necessity, in cases where new

or extended operating rights are sought, controlling questions are whether the operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well as by existing carriers; and whether it can be served by applicant in a specified operation without endangering or impairing the operations of existing carriers contrary to the public interest.

"The purpose of the Nebraska Motor Carrier Act was regulation for the public interest. Its purpose was not to stifle legitimate competition but to foster it. Its purpose was not to create monopolies in the transportation industry, but to eliminate discrimination, undue preferences or advantages, and unfair or destructive competitive practices. Legitimate competition is a normal attribute of our free enterprise system. It must be permitted to exist and the law contemplates that it shall."

The record is conclusive that the appellees cannot adequately meet the shippers' demand or need at peak periods. If 90 percent of the fertilizer volume comes during the peak periods, it should be evident that the volume the rest of the year should not control the granting of the applications herein. We appreciate that there will be peak periods within the peak periods, when even the granting of these applications will not completely meet the need, but it is evident that it will come more nearly doing so than the denial of the applications.

We find the conclusion reached by the Commission that the amount of equipment the appellants could supply would not make an appreciable contribution to the solution of Phillips' problem is not justified by the record. We believe it is based on the erroneous asumption that because appellants did not supply equipment during the past season they would be unable to do so in the future. The failure to supply equipment pending the contest of the order sustaining the motion for rehearing, and the denial of the applications, was on the advice of counsel and is not to be considered as a cri-

terion of what would be done if the applications were granted.

We find the Commission was correct in the first instance in granting the applications, and hold that the sustaining of the motion for rehearing and the denial of the applications was arbitrary and unreasonable. The order is accordingly reversed.

REVERSED.